IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE RHEA SPEERS,

          Plaintiff,

vs.

          CASE NO.:

VERIFIED FIRST LLC

          **JURY TRIAL DEMANDED**

          Defendant.

## COMPLAINT

Plaintiff Danielle Rhea Speers ("Plaintiff"), by and through her undersigned counsel, brings the following Complaint against Defendant Verified First LLC ("Defendant" or "Verified First") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a facially inaccurate employment background check report containing a record that had been dismissed and sealed nearly fifteen (15) years prior pursuant to the Holmes Youthful Trainee Act, a State of Michigan law with a goal of providing young criminal offenders an opportunity to avoid the stigma associated with criminal conviction.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorneys' fees brought against Verified First pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Verified First is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database or public records purchased from its various data vendor(s) and furnishes these consumer reports to

employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Verified First falsely reported to Plaintiff's prospective employer that she had been convicted of negligent homicide when in fact her case had been dismissed and sealed nearly fifteen (15) years prior pursuant to Michigan law.

4. Verified First's reporting was grossly inaccurate and untrue. Plaintiff is not a convicted criminal and has never been convicted of negligent homicide or any other criminal offense.

5. Plaintiff's prospective employer denied her job application after receiving a background check report ("employment report") from Defendant, which included the sealed criminal record.

6. Additionally, Defendant's inaccurate employment report could have been easily remedied had Defendant consulted widely available underlying public court records prior to issuing Plaintiff's report to her prospective employer. Had Defendant attempted even a cursory review of such records, it would have discovered that the record it reported is not even in the public record.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the contents of the consumer reports it publishes regarding consumers.

8. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and procedures, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate reporting cost Plaintiff a permanent, full-time employment opportunity, causing her to suffer a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her inaccurate background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including, but not limited to, mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As such, Plaintiff brings claims under the Fair Credit Reporting Act ("FCRA") for Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of the contents of her employment report and the files Defendant published and maintains pursuant to 15 U.S.C. § 1681e(b).

## THE PARTIES

12. Plaintiff Danielle Rhea Speers is a natural person residing in the Village of Vernon, County of Shiawassee, State of Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant Verified First LLC is an Idaho limited liability company with a principal place of business located at 1550 South Tech Lane, Suite 200, Meridian, Idaho 83642, and is authorized to business in the State of Michigan, including within this District.

14. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

15. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for employment or for credit. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain sealed criminal records are neither maximally accurate nor fair to the consumers who are subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

22. Despite its name, the Fair Credit Reporting Act ("FCRA") covers more than just credit reporting. The FCRA also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

23. The FCRA provides several protections for job applicants who are subjected to background checks.

24. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Verified First, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

25. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

26. Defendant disregarded these duties with respect to Plaintiff's employment report.

## THE HOLMES YOUTHFUL TRAINEE ACT

27. The Holmes Youthful Trainee Act, M.C.L. § 762.11 *et seq.*, (the "HYTA"), first enacted in 1966, is an alternative sentencing scheme in the State of Michigan for young adults aged seventeen to twenty-six who have been charged with a criminal offense.

28. Under the provisions of the HYTA, upon entry of a guilty plea, the court, "*without entering a conviction*" places the youthful offender into the status of a "youthful trainee" for a defined period of time. M.C.L. § 762.11(1) (emphasis added). The court may impose certain requirements on the youth during the period when they are designated as a "youthful trainee" such

as maintaining court ordered education or employment, as well as abiding by any other conditions of probation.

29. If the individual complies with the court's conditions during the period of time they are assigned the status of a youthful trainee, the criminal charges are dismissed, no conviction is entered, and the underlying records are sealed.

30. One of the primary purposes of the HYTA is to provide youthful offenders an opportunity to clear their criminal record before it permanently damages their ability to secure employment.

## FACTS

**Plaintiff Applies for Employment with Springvale Assisted Living in January 2023**

31. In or about early January 2023, Plaintiff applied to Springvale Assisted Living and Memory Care ("Springvale"), an assisted living facility community located in Swartz Creek, Michigan, for a full-time, permanent employment position as a housekeeper.

32. Soon after applying to Springvale, Plaintiff was interviewed in-person. Shortly thereafter, Springvale extended a conditional offer of employment to Plaintiff, subject to the successful completion of a background check. Plaintiff completed the 40-minute drive, each way, from her home to Flint, Michigan, in order to have her fingerprints taken as part of the background check process. Plaintiff's employment was set to begin as soon as her background check cleared.

33. Plaintiff, who had been unemployed for nearly a year, was particularly excited about the job opportunity with Springvale because the full-time position came with a pay rate of $13.50 per hour, with opportunities to earn overtime pay, and included full benefits after a ninety (90) day probationary period, including medical, dental, vision coverage and paid vacation.

**Verified First Publishes an Inaccurate Background Check to Springvale in January 2023**

34. On or about January 11, 2023, Springvale ordered Plaintiff's criminal background check report ("employment report") from Verified First.

35. On or about January 11, 2023, in accordance with its standard procedures, Verified First assembled an employment report regarding Plaintiff, which it published to Springvale on or about that same day.

36. Verified First's employment report regarding Plaintiff was grossly inaccurate. Specifically, Verified First's employment report included the following criminal record information purportedly belonging to Plaintiff:

| | Investigative | | |
|---|---|---|---|
| | **State Criminal Records** | | |
| RESULTS | Records Found | | |
| NAME SEARCHED | SPEERS, DANIELLE | SEARCH DATE | 01-11-2023 11:45 AM MST |
| DOB SEARCHED | 09-07-XXXX | SEARCH SCOPE | 7 Years |
| JURISDICTION | MICHIGAN | | |
| | *** Abstract *** | | |
| NAME ON RECORD | SPEERS, DANIELLE RHEA | CASE NUMBER | 04-001022-FH |
| DOB ON RECORD | 09-07-XXXX | COURT | 35TH CIRCUIT COURT |
| OTHER IDENTIFIERS | | FILE DATE | 02-09-2004 |
| OTHER INFO | | | |
| | Count | | |
| TYPE | MISDEMEANOR | OFFENSE | HOMICIDE - NEGLIGENT |
| DISPOSITION | PLED GUILTY | | |
| DISPOSITION DATE | 09-14-2004 | OFFENSE DATE | 09-10-2003 |
| SENTENCE | SENTENCED TO: JAIL - MN 000-000-030 MX 000-000-030; F/C/R - 1160 30M PROB | | |
| OTHER INFO | | | |
| COMMENT | | | |

37. The criminal record information reported by Verified First is false. Plaintiff does not have any reportable negligent homicide misdemeanors because Plaintiff qualified for and received "youthful trainee" status from the court where her criminal case was heard, pursuant to the Holmes Youthful Trainee Act (the "HYTA").

38. Plaintiff completed her court mandated time as a "youthful trainee" without

7

violation of the court's imposed conditions, and all criminal charges were dismissed, and all associated records sealed, pursuant to a court order that was entered on September 20, 2007.

39. Verified First's employment report inaccurately and incompletely portrayed Plaintiff's criminal record, as she has no reportable criminal record. The inaccuracies in Verified First's employment report regarding Plaintiff include the following:

   a) First, the report inaccurately states the Disposition of the case as "pled guilty." This is incorrect. Rather, any judgment of guilt was deferred, and she was placed on youthful trainee status.

   b) Second, the report inaccurately states that Plaintiff's case has a Disposition Date of September 14, 2004. This is also incorrect. Plaintiff's case was not disposed of until September 20, 2007, when it was dismissed after she successfully completed the conditions of her probation and was released from youthful trainee status.

   c) Third, the report is inaccurate, incomplete, and not up to date because it fails to mention that the charges mentioned therein were dismissed in their entirety under the HYTA on September 20, 2007.

   d) Finally, the report is grossly inaccurate because all records relating to this offense are deemed non-public. Under Michigan law, this means that the current public record status of Plaintiff's case is that it is nonexistent and has been since September 20, 2007.

40. The sole reason the inaccurate criminal record information was reported as belonging to Plaintiff was that Verified First failed to use reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's employment report.

Had Verified First used reasonable procedures, it would have discovered that Plaintiff has no reportable criminal history, as her record had been sealed *over fifteen (15) years* prior to the date Verified First published her employment report to Springvale.

**Springvale Denies Plaintiff's Job Application as a Direct Result of Defendant's Inaccurate Employment Report**

41. On or about January 11, 2023, Plaintiff received an email from Verified First with a link to a copy of the above-referenced employment report. Upon review of that report, Plaintiff was shocked, frustrated, and dismayed to see the above-referenced criminal record information included as part of the employment report Verified First had published to Springvale.

42. Soon after, Plaintiff received a phone call from Springvale's Human Resources Department, who informed her that the sealed criminal record had appeared on the employment report regarding Plaintiff, which Verified First had published to Springvale.

43. Plaintiff explained the situation, stating that she had successfully completed her time as a "youthful trainee" and, as a result, the criminal record had been sealed and should not be included in any employment report. The Springvale employee she spoke to said Springvale would conduct further review and be in touch about her offer of employment.

44. Plaintiff also provided Springvale with a copy of her Motion of Discharge from Probation, which explicitly states that her case had been dismissed pursuant to the Holmes Youthful Trainee Act on September 20, 2007, and all records related to it would be sealed and retained as nonpublic records.

**Plaintiff's Disputes with Verified First in February 2023**

45. On or about February 13, 2023, Plaintiff, hoping to salvage her employment opportunity at Springvale, mailed Verified First a letter disputing the dismissed and sealed criminal record it had reported in the employment report it published to Springvale.

46. As part of her dispute, Plaintiff provided her personal identification information, including her full name, date of birth, current address; a photocopy of her current Michigan driver's license; a copy of Verified First's inaccurate employment report; and a copy of the September 20, 2007, Motion and Order for Discharge from Probation, which confirmed that the case had been dismissed and all related records were sealed, meaning they were not in the public record.

47. On February 20, 2023, Plaintiff received an email from Jordan Stover, a Quality Assurance Specialist at Verified First, stating that Verified First had received her dispute, reinvestigated it, and removed the sealed criminal record that was included in the employment report it had published to Springvale.

48. Jordan Stover's email also stated that an amended employment report without the sealed criminal record had been provided to Leisure Living.

49. But Verified First's reinvestigation was too little, too late. Plaintiff, after numerous phone calls and emails to Springvale in the following weeks, eventually was informed by an employee of Springvale that Springvale had rescinded its offer of employment to Plaintiff.

50. Verified First's false report cost Plaintiff a promising, well-paying job opportunity with Springvale. Plaintiff was set to earn $13.50 per hour with opportunities to earn overtime pay and the position included a variety of essential benefits, including medical, dental, and vision coverage, and paid vacation.

51. As a result of Verified First's inaccurate employment report, Plaintiff, who had been out of work for nearly a year prior to her application to Springvale, continued to experience unemployment for an extended period of time. Approximately another ten weeks passed before Plaintiff was able to secure part-time employment as a cleaner at a local retailer. In addition to

only being part-time, it came with none of the additional benefits the position at Springvale would have provided her.

52. In creating and furnishing Plaintiff's employment report, Verified First failed to follow reasonable procedures to assure that the report was as accurate as maximally possible.

53. More specifically, Verified First reported this information without first confirming its accuracy, as it was able to quickly confirm with the State of Michigan, as part of its reinvestigation, that the sealed record is not publicly available and, therefore, should never have been published in her employment report.

54. Furthermore, it is indisputable that prior to Verified First supplying Plaintiff's employment report to Springvale, Verified First failed to consult widely available public court records from the Shiawassee County Circuit Court in Corunna, Michigan. Doing so would have confirmed the above referenced criminal record was dismissed and sealed pursuant to the HYTA.

55. As a result of Verified First's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Verified First's erroneous employment report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including, but not limited to, mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

56. Over the past fifteen years there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

57. As summarized in a recent report[1] by the Consumer Financial Protection Bureau ("CFPB"), a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

58. The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

59. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

60. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

61. Defendant is well aware of the FCRA and has presumably been sued several times for reporting inaccurate or outdated information.

62. Defendant is well aware of the FCRA requirements as it is a member of the national Professional Background Screeners Association ("PBSA"). PBSA puts on conferences multiple times a year where presenters discuss compliance with federal and state consumer reporting laws, including the FCRA.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

63. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

64. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

65. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for reports that are accurate.

66. Appropriate quality control review of Plaintiff's employment report would have made clear that Defendant was reporting a sealed criminal record that is not contained in the public record.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

67. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-66 of this Complaint as if fully stated herein.

68. Verified First is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

69. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

70. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

71. Verified First violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" of the contents of Plaintiff's employment report and the files it published and maintains.

72. As a result of Verified First's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Verified First's erroneous employment report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including, but not limited to, mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

73. Verified First willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Verified First is liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74. Plaintiff is entitled to recover attorneys' fees and costs from Verified First in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Verified First negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

    d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

75.    Plaintiff demands a trial by jury.

Dated: May 13, 2024

By: */s/ Adam S. Alexander*
Adam S. Alexander (P53584)
**ALEXANDER LAW FIRM**
17200 W. Ten Mile, Ste. 200
Southfield, MI 48075
Tel: (248) 246-6353
Fax: (248) 746-3793
Email: adalesq@gmail.com

Bryan L. Plaster, MN Bar No. 0402792*
Hans W. Lodge, MN Bar No. 0397012
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
hlodge@bm.net
**Pro Hac Vice Forthcoming*

*ATTORNEYS FOR PLAINTIFF*